Good morning. May it please the Court, Katherine Davis on behalf of Appellant, On Pointe Technologies. This Court should reverse for three reasons. First, the complaint states a claim under Sections 1030A2 and A4 based on this Court's recent decision in United States v. Nosal. Second, the complaint states a claim under Section 1030A5A of the CFAA. And third, the complaint adequately alleges loss and we submit, even if it does not, leave to amend in light of this Court's guidance and not dismissal with prejudice as required in this case. Regarding the first ground, reversal is required by this Court's decision in Nosal. Of course, the issue in that case is the same one at bar here today, namely whether an employee exceeds authorized access under the CFAA when he accesses an employer's computer and obtains confidential information or disclosure to a competitor in violation of employer-imposed restrictions on computer access and use. Rejecting the very same reasoning employed by the District Court here, Nosal held that an employee exceeds authorized access within the meaning of Section 1030E6 of the CFAA when he violates the employer's computer access restrictions, including restrictions on the employee's use of the computer. How does that follow? I mean, just, there's a dissent in Nosal, and I guess that the question that I have is why does the statutory references to access encompass use? They're two different things. They are two different things. Of course, the majority construed the plain text of 1030E6 and construed it to mean that when access is obtained with any authorization to use a computer for any purpose, then it is with authorization. So necessarily the statute has to be construed to understand what does the meaning of exceeds authorized access mean. And based on the plain language of 1030E6, which, of course, provides that or defines exceeds authorized access as to access a computer with authorization and to use that access to obtain or alter information in the computer that the accessor is not entitled to so obtain or alter. The majority interpreted so to mean in the matter by which. So, in other words, if one is entitled to access. I know what they said. Yes. Well, the majority, of course, held that the only way to give some meaning, the only way to distinguish between without authorization and exceeds authorized access, is to determine the scope of access with respect to the scope of use. And so the majority, of course, did find that the employer can determine the scope of access by reference to the scope of use. And so long as the employer imposes restrictions on use, an employee's violation of those imposed restrictions can violate the CDAA. Specifically, the court held that an employee who is authorized to use a computer for certain purposes that goes beyond those limitations exceeds authorized use. In this case, of course, the facts. Counsel, if I could ask you one question. Yes. On this issue. I think, as I understand it, the NOSOL court didn't overrule BRCA. And, of course, the three-judge panel couldn't. So how do they distinguish BRCA? How do they reconcile their precedent with the BRCA precedent? Well, Your Honor, the majority did so in two respects. First, I think that the NOSOL court actually followed BRCA, employed the reasoning that the BRCA court set forth in finding, again, that use and access, rather, is authorized if there's permission to use a computer for any purpose, but that the access is without authorization or exceeds authorization, rather, when an employee accesses the computer and uses the information thereon in excess of the authorization in the first instance. So BRCA actually only held that if access is given, if permission is given for any purpose at all, that it is not without authorization. But it didn't go on to further hold that if there is a violation of employer-imposed access and use restrictions, that an employee couldn't also violate 1030E6. The court also distinguished BRCA factually because, of course, in that case, it was undisputed that the employee had unfettered access to the employer's computer and the information contained thereon. There were no written employment agreements. There were no written or even otherwise guidelines imposing restrictions on access or use. And there were no restrictions on the employee's ability to access and use company information for personal use in this case. And in the case of NOZL, the facts were fundamentally different. In both cases, the employer had gone to great lengths to protect the confidentiality of the information contained on the computer, had imposed access restrictions and use restrictions, had required the employees to enter written employment agreements that explained the proprietary nature. But let me just ask you a hypothetical here. If an employer, hypothetically, and most do, say you have access to this computer, but you're not supposed to use it for personal business, it's limited to the business of your employer. And you access it in order to get the score of the giant scheme or to check on whether your daughter is on time. Have you committed a federal crime? Well, under the majority's reasoning in the NOZL case, I would have to concede that the answer would be yes. And the reason is the court emphasized that the critical point, as the panel knows, is whether there are employer-imposed restrictions on access, which would include restrictions on use. So an employee has notice. This isn't a case where there would be no notice. Oh, sure. But do you think that that's what Congress intended? Well, that's a difficult question. I mean, certainly the CFA is a criminal statute, and I wouldn't imagine that Congress intended to criminalize innocuous conduct. But we have to adhere to the decisions of this court, which in this case is NOZL, and it expressly addresses the dissent's concern in that regard and states that if there are employer – you know, the key is employer-imposed restrictions. So that once there is a breach of the access, which includes a breach of the use, then the behavior is no longer innocuous. Also, I would note that A4, of course, expressly contemplates knowingly accessing a computer with fraudulent intent, without authorization or in excess, and through such conduct furthering the fraud and obtaining anything of value. And so at bare minimum, if NOZL is limited to A4, it's our position that since NOZL construed E6, that applies broadly to the CFAA. But if the court is indeed concerned with that, then the correct response we would submit would be to limit it to A4, where you have fraudulent intent, and then the concern evaporates. And I believe that that was Appellee's very argument in taking the position that NOZL shouldn't be extended beyond A4 for that very reason. So that's one way to think about it. Could you please address at some point what you mentioned earlier, the idea that you think you have loss within the meaning of the statute? Because it covers loss from interruption of business, but I don't see how it would cover lost business opportunities because someone took proprietary information if it didn't interrupt the business. Well, that's an excellent question, Your Honor. Our position, as we stated in the briefs, well, let me start by saying two things. One, it's undisputed that lost profits are compensable under the CFAA. So this court, of course, has expressly recognized that economic damages include lost profits and loss of goodwill. So that would contemplate lost revenues. The question is, as Your Honor points out, whether additional allegations are different, really fundamentally different allegations of loss, which would require some showing of physical impairment, physical damage, and interruption of service are required. This court has not addressed that issue, of course. There are at least two district courts that have found that lost revenues arising from unauthorized use, computer use, constitute loss within the meaning of the statute, even if there's no physical damage or interruption of service. Our position is that the statute should be construed to advance its purpose, and its purpose is to broadly prohibit computer theft and abuse, and Congress clearly provided or intended to provide for compensatory damages. Several circuits, of course, including this one, have held that misappropriation, unauthorized theft and misuse violate the statute, even in cases where there's no allegation of physical damage or interruption of service. The statute itself defines loss as any reasonable cost to any victim. That's a very broad definition, and the Supreme Court has held that when Congress uses the word any, it needs to be construed expansively and indiscriminately. So with a view to the purpose of the Act and understanding that compensatory damages, including lost revenues, are available, the question becomes, well, is there really a second step required? Does someone have to show a physical impairment? And our position is that that is too narrow a view, because clearly there are situations, many, perhaps if not most, where a sophisticated intruder will infiltrate, and we can use a hacking example here, it's the easiest one to use, can infiltrate and steal very valuable information, not leave a physical trace, not crash a computer, and yet they're immune from liability and the victim has absolutely no remedy. So on that view, our position is that the definition of loss ought to be construed with an eye towards that purpose. Of course, the Nexon's case is not binding on this Court. It's an unpublished decision by the Second Circuit. Alternatively, our position is that notwithstanding how the Court construes the loss provision, two things, we think that the complaint adequately alleges loss, even if the Court thinks that actual costs are required. We allege $1 million in damage. Damage, as generally understood, includes actual costs, of course. But more importantly, if the Court finds that the allegations are insufficient, we would submit that leave to amend is appropriate in this case. The District Court did not rule on the loss issue. The motion to dismiss was granted without oral argument. We never had a chance to seek amendment. And obviously, since this Court has not ruled on the loss issue, we submit that we should have an opportunity to amend in light of the Court's guidance. The appellees don't contend that amendment would be futile in this case, nor could they. We certainly could amend to allege actual costs and actual expenditure. One last point on that. The appellees do argue relatedly, setting aside loss revenues arising from interruption of service and looking at the first part, just actual costs, they contend that only costs that are actually related to the computer are cognizable. Again, going with this theory that in addition to just breaching and stealing information, you have to physically impair a computer, a construction which we reject. But on that construction, they argue that the costs that you spend in responding to an offense, assessing damage, or restoring information have to be related to the computer. And I would just point out that that's not what the statute says. It actually says in responding to any offense, it does not have a requirement that there be physical damage to a computer. And the First Circuit has recently addressed this issue in United States v. Genosco. We just found this case, and I will submit a Rule 20HA on that. Let me take you back for just a moment, and then I want to give you a minute for rebuttal. But if we were to limit the statute, the criminal statute to fraudulent intent, what would that do to this case? I just want to make sure I understand the ramifications. Yes, Your Honor. Thank you for the opportunity to address that. Our case would remain viable. Our view is that we have a claim under A2, A4, and A5. But certainly we do state a claim under A4. We allege that the purpose of this access and misappropriation was with fraudulent intent, to steal information for the benefit of assisting a competitor. And so we would fall within the confines of A4, no matter how the court decides to limit NOSL as applied in this case. Excuse me, one really quick question. My recollection was that your client brought this case in 2008 in state court, then dismissed it in 2010, two years later to bring it then in federal court to be able to, and then added on this federal cause of action. Yes. So was the impetus for that the NOSL decision? Was there a reason why the federal claim was not brought originally in 2008? Well, I was not counsel in that case, and I didn't participate in it. I don't believe that was the case. NOSL, I believe, came out long after the dismissal. I will tell the court that the state court action was reinstituted. I'm sorry. And survived summary judgment is actually set for trial. So any suggestion by appellees that there was some gamesmanship and we didn't have merit in the state court claims is false, because those claims are proceeding on the merits to trial. Thank you. Thank you very much. We will give you a minute. Thank you. Good morning. Good morning. May it please the Court, Nathaniel Garrett for the appellees. Your Honors, in effect, the plaintiffs are asking this Court to federalize the misappropriation of trade secrets without imposing any of the limitations that are imposed by state trade secret law. In our view, that's a misapplication of the CFAA, which is a federal statute wholly concerned with computer access, not with the misuse or the disclosure of protected business information. So what do we do with NOSL? Well, Your Honor, let me get to the question you asked the appellant, which is how do we make sense of NOSL given that the statute talks about access and NOSL appears to talk about use. And I think the answer is on page 8 of the government's opposition to OnBank, which is to explain it as saying, in effect, NOSL used some loose language. They're not really talking about situations where somebody misuses business information. They're talking about a violation of computer access policies. This is on page 8 of the government's brief. And what they say is, in our case, we contend that Korn Ferry, that business had a pop-up that would pop up on what's called the searcher database, a confidential database, and it said you cannot use this program except for lawful business purposes. And so what their point is, this is really just an access policy, like the access policy in Rodriguez. It's about the reasons you're allowed to access products or information on the computer. I think there are arguments why NOSL is definitely a stretch and needs to be revisited. But if the government's right, what that means is we're really talking about computer access limitations. And that's the problem in this case, Your Honor, because if you look at the reply brief at page 11, we're not talking about computer access policies in this case. We're talking about theft and disclosure policies about business information, policies that say, in effect, you're going to be exposed to confidential information at on point and you're expected to not disclose it to a competitor. So in their view, the way the CFA works is that if an employee downloads confidential information from a computer, even though they're authorized to access that information, and then they disclose it in contravention of an employer policy about disclosure, well, then they violate the CFA. But if the same employee takes the same information from a file cabinet or a wastebasket and they disclose it, that's not a violation. That turns the CFA on its head. In 1986, what Congress said in enacting this statute is, this is a statute about breaking and entering. In effect, it's that initial access into a computer or computer information that you're not allowed to have. What we're not doing is criminalizing the misuse of a computer in committing acts. But that's what they're saying. They're saying that we violated disclosure limitations by use of a computer. So I think one way to think about this is Nozell, one of the subtleties I think Nozell overlooks is that it suggests that there's somehow all these cases on one side of the spectrum and then Nozell was taking a different position. That really overlooks that the cases are all over the map in terms of their interpretive methodologies and what exceeds authorized access means. And I think there's basically three or four things it could mean. And what the plaintiffs are doing here is pushing it entirely past Nozell and into a whole other realm. And what I mean by that is, one way to read it is the way I think Brecker suggests, which is to say without authorization is about you don't have authorization to access a computer. Exceeds authorized access means you don't have authorization to access computer information. It just serves a different purpose as to a different kind of, instead of the computer you're talking about computer information. And so if you're not allowed to access the P drive, but you access the P drive, you're supposedly limited, that's violation. That's one way to look at it. I think Rodriguez and Nozell in effect take a second view, which is if there are limitations imposed on computer access, for example, you know, the pop-up on the computer comes up, says you can only access this for limited purposes. You violate that, that's a violation. That's sort of a second way of dealing with it. For the reasons we set forth in our brief, I think Nozell goes too far. But what the plaintiffs are asking you to do is take it even further and go to information disclosure policies, policies that don't actually have a nexus to computer use, computer access, and just talk about whether you can use or disclose business information a certain way. And that is an extension of Nozell that CFA's language, its purpose, don't support. So in this case, the employees had, in this case, bring it back to this case. Sure. Well, the complaint is unfortunately a little bit vague about what the actual policies are. I think that's the problem we're dealing with. And so you sort of have to go to the arguments in the brief to try to figure it out. And so on page 11 of the reply brief, they say, the plaintiff's misconstrued Nozell. They say, Nozell suggests that an employee's access of his employee's computer with the fraudulent intent to misappropriate and disclose to a competitor confidential business information in knowing violation of employer policies and confidentiality agreements, prohibiting such theft and disclosure, clearly violates the CFAA. So they're not talking about computer access. They're talking about policies about theft and disclosure. And I would note, I don't want to get too far outside of the procedural context of where we are, but as the appellant noted, we're now on the threshold of trial in this state court case. We know what this case is about now, Your Honor. We have the employee agreements that they're talking about. And having seen those agreements, I can tell you there's nothing about computer access or computer use. It's about the disclosure of business information. And I don't want to go outside the record. The only reason I bring that up is because I don't want the court to send back a case and we're here in two months because we don't address this question of whether Nozell extends to these kinds of policies. If I could address Judge Gould's question about loss, I think there's still some confusion about the difference between economic damages, as that term is used in 1030G, and loss, as that term is used in 1030C4A1, which is referred to in 1030G. I think the court gets the distinction. Judge Gould's question suggests that the court does. Perhaps for an easy reference, there's a case out of the District of Maryland, a 2010 case called Coastal Realty. The plaintiff there had the same confusion about why those two terms are different. So you want an easy access reference to the confusion there. But here we're just talking about loss in 1030C4A1. And that's because 1030G says, in addition to damages and loss, you have to prove one of these five provisions. And basically the important point here is that the plaintiff is urging a broad interpretation of the CFAA. I mean, we can debate whether the CFAA in general should be read broadly or narrowly. But when it comes to loss, I don't think you can debate it. Let me go back to your pop-ups. Sure. What I was trying to get at is I understand that in this case there was no pop-up. Again, we've gone through the state court case. I've checked with the people running the state court case. That's my understanding. I mean, as far as this record is concerned, these employees had access. They absolutely had access. That's what paragraph 22 of the complaint says. And so, again, I think we're talking about just the sort of generic disclosure policies you see. Now, I mean, Judge Schroeder, you know, and there are a lot of employees. Mine is one of them that also has these pop-ups that say, you know, when you're going to use computer access or these programs, you've got to use it for lawful business purposes. It's limited to official. Yeah, and Nozell absolutely raises really significant questions about criminalizing innocuous conduct, about whether Congress possibly could have intended for such conduct to be captured. But I just don't think that's what's presented in this case because. . . What about the suggestion by the appellant that we limit Nozell to cases with fraudulent intent? What does that do? I mean, I'm in a tough position here because I understand that in most cases you read these terms the same way. And so I think that the intellectually honest answer is that Nozell should be taken on bank and it should be looked at. And I am at a loss. It's why the majority didn't address the fact that it does extend beyond 1038-4 and confront that because it's the obvious import of the decision. Having not done that, do I think this panel could limit it to 8-4? Absolutely. I think that's what this case is about is this is a very significant case about what does Nozell mean. It's going to be the first case to interpret it. And it's going to have ramifications, Your Honor, because there's a case right now in the Fourth Circuit called WEC Carolina that's been fully briefed, and it's this case. It's this exact situation where the district court said cases like John, you know, those are still cases about computer access policies. And here we just have a policy about disclosure of business information. Well, I might say that the mandate is not issued in Nozell, and it may be a moving target. I think it is a moving target, and I hope it is because for the reasons we set forth in the brief, I think there's very significant problems with it. I don't know if the Court has any other questions about Nozell, or I haven't addressed the 8-5 issue. I'll just address that briefly and point out something we didn't really talk about in the brief. And that's just to take a step back and look at 1038-5 and consider what that provision is really about. Because what it talks about is transmitting a code or a program or information, and thereby causing damage to a computer. And I think if you step back, you realize what Congress was concerned about. And incidentally, this was the first provision that Congress ever created a civil cause of action for. And I think what they were clearly concerned about was what was happening in the 1990s, which was viruses, worms, people sending these malicious programs into a computer, and thereby damaging the computer. Here we don't have anything transmitted into a computer. We have information transmitted out of the computer, and there's no damage to a computer at all. There's damage, I suppose, to the proprietary nature of the information, allegedly. But what 8-5 says is damage to a computer. So you don't even need to get into what damage means, because it's talking about damage to a computer. And the mere misappropriation of information wouldn't do that. Unless there are any further questions, I'll submit. I have no questions. Thank you. Thank you, Your Honor. Just add anything briefer. Very briefly. Very briefly. Thank you very much. Just for the record, I would just like to make our position known that referencing a state court record that's not in front of this Court is wholly inappropriate. I'd also like to point out that NOZA was not an outlier. I'm sure the panel has read and studied Rodriguez, John, Exflorica, and the other cases, and they all state that the CFAA can, under certain circumstances, prohibit the misappropriation and use, misuse. Whether you call it disclosure or misuse, the impact is the same. Also, I'd like to point out that the FLEs actually mischaracterized the allegations in the complaint. There are restrictions on access that are alleged, and because it's such a critical point, I'd like to just read them. The complaint alleges that although the employees had access to EnPointe's computers, it was expressly agreed and understood that such access was to be kept confidential. All right. You're reading from what paragraph? I'm reading from paragraphs 22 and 23, page 95 of the ER. So the briefing was before NOZA, and so we focused on quoting. This is an access case. All right. You have used your time, then. Thank you very much. I appreciate it. Thank you very much. Are there any further questions of either counsel? All right. Thank you. The matter just argued is submitted for decision. That concludes the Court's calendar for this morning, and the Court stands adjourned.
judges: Navarro, Schroeder, Gould